In re the MARRIAGE OF Susan Kay MILLER and Dwight Andrew Miller.

Upon the Petition of Susan Kay Miller, Appellant,

And Concerning Dwight Andrew Miller, Appellee.

No. 85–891.

Supreme Court of Iowa.

July 23, 1986.

William R. Tysseling, of Tysseling & White, Ames, for appellant.

John L. McKinney, Ames, for appellee.

SCHULTZ, Justice.

The principal issue is whether joint custody of children is an appropriate disposition in this dissolution action. The trial court awarded the petitioner Susan K. Miller custody of the parties' two children and granted the respondent Dwight Andrew Miller specific visitation rights. Susan appealed, challenging the extent of visitation and the economic provisions of the decree. Dwight cross-appealed, contesting the custody award. The court of appeals affirmed the trial court in all respects, except that it modified the award of sole custody to provide for a joint custody arrangement with

Susan having physical care of the children. We vacate the decision of the court of appeals and affirm the judgment of the trial court.

I. *Principles concerning visitation and joint custody.* In marriage dissolution actions, our present statutory scheme directs the court to provide ample visitation with both parents and, upon the request of one parent, to consider granting joint custody, subject to the considerations of the best interests of the child and reasonableness. Iowa Code § 598.41 (1985).[1] The statute emphasizes maximum physical and emotional contact between each parent and child, and gives preference to a joint custo-

dy arrangement, when such an arrangement is requested by either parent.

The present emphasis on the award of joint custody is a relatively new concept in family law in this state. Recently, we comprehensively described the legislative history and case law which outlines joint custody in modern dissolution actions. *In re Marriage of Weidner,* 338 N.W.2d 351, 354–56 (Iowa 1983). In discussing the principles governing joint custody, we rejected the suggestion that the legislature created a presumption that joint custody is in the best interests of the children; however, we acknowledged that our statutes now express our preference for joint custody over

---

1. Section 598.41 in part states:

    1. The court, insofar as is reasonable and in the best interests of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, unless direct physical harm or significant emotional harm to the child is likely to result from such contact with one parent, and which will encourage parents to share the rights and responsibilities of raising the child. The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement. Unless otherwise ordered by the court in the custody decree, both parents shall have legal access to information concerning the child, including but not limited to medical, educational and law enforcement records.

    2. On the application of either parent, the court shall consider granting joint custody in cases where the parents do not agree to joint custody. If the court does not grant joint custody under this subsection, the court shall cite clear and convincing evidence, pursuant to the factors in subsection 3, that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed. Before ruling upon the joint custody petition in these cases, the court may require the parties to participate in custody mediation counseling to determine whether joint custody is in the best interest of the child. The court may require the child's participation in the mediation counseling insofar as the court determines the child's participation is advisable.

    The costs of custody mediation counseling shall be paid in full or in part by the parties and taxed as court costs.

    3. In considering what custody arrangement under subsection 2 is in the best interests of the minor child, the court shall consider the following factors:

    *a.* Whether each parent would be a suitable custodian for the child.

    *b.* Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.

    *c.* Whether the parents can communicate with each other regarding the child's needs.

    *d.* Whether both parents have actively cared for the child before and since the separation.

    *e.* Whether each parent can support the other parent's relationship with the child.

    *f.* Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.

    *g.* Whether one or both the parents agree or are opposed to joint custody.

    *h.* The geographic proximity of the parents.

    4. Subsection 3 shall not apply when parents agree to joint custody.

    5. Joint legal custody does not require joint physical care. When the court determines such action would be in the child's best interests, physical care may be given to one joint custodial parent and not to the other. If one joint custodial parent is awarded physical care, the court shall hold that parent responsible for providing for the best interests of the child. However, physical care given to one parent does not affect the other parent's rights and responsibilities as a legal custodian of the child. Rights and responsibilities as legal custodian of the child include, but are not limited to, equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.

other custodial arrangements and do not allow one-party vetoes of joint custody arrangements. *Id.* at 356. We reiterated that our first and foremost consideration in determining custody is the best interest of the child involved, but acknowledged that the specific factors listed by the legislature in section 598.41(3) are to be considered when a parent requests joint custody. *Id.* The best interest of a child includes the opportunity for a continuous relationship with both parents. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986).

■ Since *Weidner,* the legislature has further strengthened the visitation rights of the noncustodial parent and has augmented the court's duty by requiring it to spell out reasons for denying joint custody. Section 598.41 (1983) was amended, eliminating language in subsection 1 that required the court to allow a child "frequent and continuing" contact with both parents, and adopting the present language requiring "the opportunity for maximum continuing physical and emotional contact with both parents." 1984 Iowa Acts ch. 1088, § 2 (codified at Iowa Code § 598.41(1)). Further revision of the 1983 section deleted language in subsection 2 which required the court to "state in its decision the reasons for denying joint custody" and substituted the present language: "the court shall cite clear and convincing evidence, pursuant to the factors in subsection 3, that joint custody is unreasonable and not in the best interests of the child to the extent that the legal custodial relationship between the child and a parent should be severed." *Id.* These changes reflect a legislative preference for maximum parent-child contact in determining reasonable visitation, and require a court denying a request for joint custody to expressly cite clear and convincing evidence supporting its decision.

II. *Visitation and joint custody in this case.* We first address the issue of joint custody of the children by both parents. The trial court found that the best interests of the children required that Susan have their custody; however, the court

did indicate that both parents were equally capable of taking care of the children. Even so, the trial court rejected joint custody, stating:

> There has been a problem with visitation. These parents do not agree regarding the children. Petitioner does not believe respondent can properly care for Andrew. These folks are at odds regarding care of the children. This is not a case for joint custody.

The court of appeals agreed with Dwight's contention that the award of sole custody to Susan was inappropriate, and awarded joint custody to both parties with the physical care in Susan, but did not change the trial court's prescription as to visitation.

An examination of the trial court's decree in its entirety reveals a deficiency in citing evidence expressly, but also provides insight into the court's reasoning. Initially, we believe the trial court failed to adequately state clear and convincing evidence, as required by section 598.41(2), that makes joint custody unreasonable. While it did not state reasons in detail, the court correctly concluded that the best interest of the child is the heart of a custody issue. Indirectly, the court revealed its reasons for denying joint custody. It referred to and focused on disagreements regarding the care of the children, and lack of communication between the parties. The court referred to the oldest child's anxiety attacks prior to visitation and the psychologist's explanation of the attacks. It exhorted Susan and her parents to improve their attitudes concerning Dwight's visitation. Although the trial court limited its advice to visitation, it suggested to both parties that they should put aside their animosity and cooperate in the best interests of the children.

■ The omission of the required citation of clear and convincing evidence does not necessitate a reversal of the trial court's award of custody for two reasons. First, the controlling issue on appeal concerns the correctness of the award of custody, not the lack of stated reasons. Second, Dwight could have moved for an en-

largement of the findings and conclusions of the trial court. Iowa R.Civ.P. 179(b). Without such a motion, we need not consider the absence of particular findings of fact or conclusions of law on appeal. *See Nowlin v. Scurr*, 331 N.W.2d 394, 396 (Iowa 1983).

In our review of the trial court's findings of fact and conclusions regarding custody, it is apparent that the trial court assessed the credibility of the witnesses, including the parties and the child psychologist appointed by the court. The trial court relied heavily on the psychologist's recommendations in determining its award of custody. We give weight to the trial court's findings, especially the assessment of the credibility of witnesses, because we are unable to form impressions based on the demeanor of the witnesses during the presentation of the evidence. *In re Marriage of Zabecki*, 389 N.W.2d 396, 400 (Iowa 1986). We now turn to the pertinent facts.

Susan, age 28, and Dwight, age 31, were married in 1975. Early in the marriage, Dwight was in the Air Force as a mechanic. Susan completed nursing school and was employed as a nurse. Since the birth of their first child in 1979, she has been a full-time housewife and has had the primary care of the children. In 1978, Dwight completed his military duties and the parties returned to Iowa. He was employed in his father-in-law's business until the parties' separation. Since then he has trained as an aircraft mechanic. Susan has moved in with her parents. She receives ADC benefits; however, Dwight is paying support under an arrangement established by the Child Support Recovery Unit.

The parties have severe problems in communicating with one another. Prior to separation and up to the very time of the dissolution, the parties were embroiled in conflicts. They show little capacity to discuss and resolve their mutual problems.

We find credible Susan's testimony that days would go by in which he would not speak to the oldest child or to her. Susan appears to be quite religious; Dwight has negative feelings about church and religion and refuses to go to church. One of the incidents that led to the dissolution involved a disagreement between the parties concerning godparents for their youngest child. Shortly before the christening, Dwight objected to Susan's selection of her parents' friends as the godparents. Because Susan did not change the arrangements, Dwight did not attend the church service or the dinner that took place afterwards at the maternal grandparents' home.

The final separation was precipitated by a dispute over visiting her parents for Thanksgiving. Dwight claimed Susan assumed he would be willing to go, but he refused. As an outgrowth of this dispute, Susan decided to leave Dwight and called her parents. When her parents arrived, Susan and Dwight had a physical tug-of-war involving the children. Following this unfortunate event, Dwight and Susan's parents engaged in a physical altercation. Although the physical confrontations now have ceased, the parties have continued to disagree on most matters. At trial neither party referred to the other by name.

While the dissolution action was pending, the parties had problems concerning the children's activities, including a disagreement over rules for the children's bicycle riding and a refusal by Dwight to return certain dolls to the children. On two occasions Dwight's refusal to make a timely return of a child after visitation has necessitated the intercession of law enforcement personnel.

The psychologist indicated that joint custody would not serve any purpose as far as the children are concerned. She indicates that "poor communication prompts me to suggest that the court make the children's right to access to their father through visitation very specific, leaving very little space for the Millers to work out the arrangements by 'mutual agreement.'" The psychologist does point out that the anxiety of the oldest child concerning visitation "appears to be more related to her mother's reaction and to her parents' reactions to each other than to her actual experiences." While the psychologist recom-

mends against joint custody, she acknowledges the importance of the children getting to know their father.

With these facts and events in mind, we must determine whether the trial court erred in awarding sole custody to Susan and in rejecting an award of joint custody. We shall consider the best interests of the minor children by considering the factors stated in section 598.41(3).

Our consideration of these factors individually produces mixed results. Factors indicating that joint custody is viable are as follows: (1) Each parent would be a suitable custodian for the child. (2) Both parents have actively cared for the children since the separation. Although Dwight waited approximately six months after the dissolution proceedings to get a temporary order for visitation, he did exercise visitation prior to that time. This factor weighs only minimally in favor of joint custody because Dwight's actual care of the children before and since the separation has been infrequent and of limited duration. (3) Although the parents do not live in the same community, their relative geographic proximity would present no great problem if joint custody were awarded. Neutral factors include the following: (1) The psychological and emotional needs of the children will not go unmet due to a lack of active contact with and attention from both parents. The liberal visitation awarded by the trial court will compensate for the additional attention that might have been derived from joint custody. (2) Because of the children's ages, their wishes do not present a dispositive factor. According to the psychologist, the six-year-old daughter has allied with her mother in the conflict between the parents; however, she appears to be comfortable with her father and enjoys his company. The following are factors indicating that joint custody is not in the best interests of the children: (1) Both parties do not agree to joint custody. Susan opposed an award of joint custody and had an active part in the parties' failure to communicate with each other. Although neither Susan's opposition to joint custody nor her role in the parties' inability to communicate with each other shows her to be so inflexible as to be unsuitable for sole custody, we wish to point out that the determination of fitness for sole custody may be affected in some cases by one parent's attempting to prevent joint custody from working. (2) The parents fail to communicate with each other regarding the children's needs.

Our review of the record indicates that this communication problem existed prior to the dissolution and was the major cause of the dissolution. We will not detail all of the disputes of the parties; however, we believe that the parties have exhibited a total lack of ability to reason and deal with each other which exceeds the bounds of the normal acrimonies present in a dissolution action. The parties have obvious differences as to religious goals and family relationships, and have shown an inability to discuss and resolve these problems. These differences have led to physical confrontations, problems with visitation that required police intervention, and the complete failure of attempted joint counseling. While we would hope that these matters would improve after the dissolution decree, we believe the differences between the parties that caused the lack of communication will continue to exist. We conclude that the parties will be unable to agree on decisions affecting the children's legal status, medical care, education, extra-curricular activities, and religious instruction. *See* Iowa Code § 598.41(5). (3) Neither do we believe that either of these parents can support the other's relationship with the child. Neither parent shows a strong interest in supporting the other in dealing with the children.

■ When we weigh these factors together, we must agree with the trial court's assessment that the best interests of the children require that sole custody be placed in Susan. The factors involving lack of communication and mutual support of the other parent are so negative that they outweigh the other factors which support the preference for joint custody. Joint custody requires equal participation with equal

rights and responsibilities in parenting of a child. *Zabecki*, 389 N.W.2d at 399. We believe that the degree of hostility between these parents and their complete inability to communicate would have a severe impact on the children if we ordered joint custody, requiring the parties to agree on the basic decisions that must be made in the upbringing of children. We agree with the conclusion of the psychologist that "joint custody would not serve any purpose as far as the children are concerned."

■ We conclude that there is clear and convincing evidence that joint custody is unreasonable in this case, and not in the best interests of the children as provided in section 598.41(2)–(3). We believe that the hostility between the parents and their inability to communicate effectively prevent their equal participation in decisions affecting upbringing of the children.

■ III. *Visitation and other issues.* We believe that the court of appeals was correct in failing to modify the trial court's decree regarding visitation of the children. Basically, the trial court awarded alternate weekend visitations, four weeks visitation each summer, and one week at Christmas. We believe that this specific order of liberal visitation fits the statutory guidance of section 598.41(1) by assuring the children the opportunity for "the maximum continuing physical and emotional contact with both parents." Although this conflicts with the psychologist's suggestion as to the appropriateness of extended visitation, we believe that the alternate weekend visitation will prepare the children for the extended period in the summer.

We have considered the other issues concerning the economic provisions of the dissolution decree which were raised on appeal but not on the petition for further review. We find no error on the part of the trial court.

DECISION OF COURT OF APPEALS VACATED; AFFIRMED.

All justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

The legislative preference for joint custody is not aimed at the problems of physical care but is a limitation placed on the power of the court to terminate or dilute basic parental rights. Joint custody should be ordered by the court except where it clearly appears that the parent not having physical care will fail to exercise such rights in a responsible manner. In the present case, it has not been demonstrated persuasively that Dwight will fail to perform adequately in this regard.