In re the Marriage of Dwayne R.R. EILERS and Joyce A. Eilers n/k/a Joyce A. Kramer.

Upon the Petition of Dwayne R.R. Eilers, Appellant,

And Concerning Joyce A. Eilers n/k/a Joyce A. Kramer, Appellee.

No. 94–06.

Court of Appeals of Iowa.

Nov. 28, 1994.

Stephen B. Jackson, Cedar Rapids, for appellant.

Richard Betterton of Johnston, Potterfield, and Nathanson, P.C., Waterloo, for appellee.

Considered by DONIELSON, C.J., and CADY and HUITINK, JJ.

DONIELSON, Chief Justice.

Dwayne Eilers appeals from the modification of the parties' dissolution decree. He raises the issues of custody, support, attorney fees and contempt. In an equity action our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of

the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7). Based on our review of the parties' arguments, the trial court record and the applicable law, we conclude the trial court's findings and conclusions should be affirmed as modified.

Dwayne Eilers and Joyce Rublack Kramer had a child, Jennifer, born July 24, 1985. Dwayne and Joyce were married August 15, 1987. On June 25, 1990, a decree of dissolution was filed. The decree incorporated a written stipulation executed approximately a week earlier by the parties. In anticipation of Joyce's imminent remarriage, the stipulation provided Dwayne would relinquish his parental rights and would consent to the adoption of Jennifer by Joyce's new husband. The stipulation contained the following language relevant to this appeal—

> In light of the agreement of the parties that Respondent will consent to the adoption of Jennifer Rublack by David Kramer, thereby terminating Respondent's parental rights, Respondent shall have no obligation to pay child support. This is conditioned upon the filing of the step-parent adoption within thirty (30) days of the filing of the Decree of Dissolution, and in the event the adoption does not occur within a reasonable time, the matter of child support and visitation may be re-opened and re-determined. Petitioner shall be responsible for the payment of reasonable attorney's fees and court costs for the determination of those two issues.

On August 23, 1990, Dwayne filed an application for modification of the decree. The application indicated he had filed a revocation of his consent for the adoption and now wished to fully exercise visitation rights and pay child support.

On October 17, 1991, Joyce filed an application to modify the decree. Among other things, her application requested child support retroactive to the date of the dissolution decree. On October 18, 1991, Dwayne filed an amendment to his application for modifi-

cation, and he requested he be granted Jennifer's primary physical care.

The record reflects numerous contempt actions have been filed against Joyce for interfering with Dwayne's visitation with Jennifer. Twice in 1992 she was found in contempt of court with a seven-day suspended sentence imposed for each violation. Dwayne filed additional applications to show cause in 1993, and hearing on these applications was held in conjunction with the trial on the applications to modify on September 27, 28, 29, 30 and October 1, 1993.

On November 1, 1993, the district court entered an order modifying the dissolution decree. It found Dwayne's decision not to relinquish his parental rights constituted a substantial and material change in circumstances. In it findings the district court found—

> The custody dispute between Joyce and Dwayne has been unusually bitter. They have been totally unable to speak to each other about Jennifer on a civil basis, without lapsing into vitriolic exchanges.... Both parties have frequently involved the police in their disputes, and several allegations of child abuse have been made to the Department of Human Services. Most recently, the Department has recommended that Juvenile Court action be taken, but the County Attorney has not begun any action as yet.

The district court concluded Jennifer should remain in the physical care of her mother. Due to the parties' "severe lack of ability to communicate" the court imposed a strict visitation schedule and concluded joint custody would not be appropriate. The court found Dwayne had failed to meet his burden of proof in proving contempt and declined to award him attorney fees. Dwayne was ordered to pay child support in the amount of $195 per month, retroactive to the date of the filing of his application to modify.[1]

### I. *Custody.*

Dwayne argues the district court erred in failing to transfer Jennifer's primary

---

1. Support was originally set at $225 a month but was reduced to $195 following the filing of Dwayne's rule 179(b) motion.

care to him and in declining to award him joint custody. We have carefully reviewed the record and find Joyce has been Jennifer's primary caretaker since her birth, and the evidence demonstrates they are emotionally bonded and have a close relationship. Jennifer had not similarly bonded with her father. While we do not condone Joyce's efforts to impede Dwayne's contact with Jennifer, we conclude it is in Jennifer's best interests for her to continue in Joyce's physical care. In affirming the placement of Jennifer with Joyce, we have given special consideration and weight to the fact the trial judge had a first-hand opportunity to observe the parties and their witnesses and to assess the relationship Jennifer has with each of her parents.

We also find it was in Jennifer's best interest not to award Dwayne joint custody. "Joint custody" is an award of custody under which both parents have equal rights and responsibilities toward their child. *See* Iowa Code § 598.1(3) (1993); *In re Marriage of Smiley*, 518 N.W.2d 376, 378 (Iowa 1994). These equal rights and responsibilities include, but are not limited to, equal participation in decisions affecting a child's legal status, medical care, education, extracurricular activities and religious instruction. *See* Iowa Code § 598.41(5) (1993).

In determining if joint custody should be awarded, a court is to consider the factors set forth in Iowa Code section 598.41(3) (1993). There may be situations in which the parents' lack of communication and mutual support may overcome the preference for joint custody. *See e.g., In re Marriage of Miller*, 390 N.W.2d 596, 601 (Iowa 1986). The district court found joint custody was not appropriate in this case due to the parties' severe inability to communicate about issues affecting their child. We concur with this conclusion. Correspondence from a court-appointed counselor documents the level of animosity between these parents and no realistic hope is offered to believe their relationship will change. It is in the best interests of Jennifer to place her in the sole custody of Joyce.

In awarding sole custody to Joyce, we recognize these parents are not able to communicate and make mutual decisions about their daughter. However, an award of sole custody does not deprive Dwayne of his legal right to information about his daughter's education, day care, extracurricular activities, or medical concerns. We admonish Joyce not to interfere with Dwayne's attempts to obtain information of this kind.

## II. *Child Support.*

■ Dwayne contends the court was without authority to make his child support obligation retroactive to the date he filed his application to modify. Instead, he argues the obligation could only be retroactive to October 17, 1991, the date Joyce filed her application to modify. Judgments for child support may be retroactively modified only from the date the notice of the pending petition is served on the opposing party. Iowa Code § 598.21(8)(*l* ) (1993).

A review of the district court file reveals Joyce executed an acceptance of service of Dwayne's application to modify on September 7, 1990. In his application Dwayne agreed to pay child support and requested the court impose a reasonable support obligation. He initially placed the issue before the court and should not be surprised the court linked imposition of the obligation to his original request. We modify the district court ruling only to make the support retroactive to the date Joyce was served with the application as required by statute.

■ Dwayne also claims the district court erred in not deducting from his net earnings child support paid for other children. Under the child support guidelines prior child support obligations "paid pursuant to court or administrative order" are deducted from gross monthly income to determine a parent's net monthly income. The district court refused to deduct $100 for child support paid to a former wife because the payment was not made pursuant to a court or administrative order. Dwayne offers no evidence to contradict this finding and we affirm the district court's decision not to deduct this amount in determining Dwayne's net monthly income.

### III. *Attorney Fees.*

Dwayne argues the district court was required to award him attorney fees because the original stipulation specified Joyce would be responsible for the payment of reasonable attorney fees in the event her new husband did not adopt Jennifer and the issues of support and visitation had to be addressed in a later proceeding. The district court concluded Dwayne was not entitled to an award of attorney fees under this provision since it was his conduct which had prevented the adoption from occurring and had necessitated the additional proceedings. We concur with the district court's interpretation of the stipulation and affirm its refusal to award Dwayne attorney fees.

### IV. *Contempt.*

At the time of the trial on Dwayne and Joyce's modification applications, the court also had before it Dwayne's application to cite Joyce for contempt. The district court found Dwayne failed to carry his burden of proof on this issue. The court further found all prior contempt sentences which had been suspended would be discharged without revocation. Dwayne argues the trial court was without jurisdiction to discharge the prior suspended sentences of contempt. Our review with respect to this issue is whether there is substantial evidence to support the trial court's decision. *See In re Marriage of Hankenson,* 503 N.W.2d 431, 433 (Iowa App. 1993).

The district court found the alienation which had occurred between Dwayne and Jennifer was not solely the result of Joyce's conduct. Rather than make sincere, cooperative efforts to obtain visitation, the district court found Dwayne had manipulated situations in order to buttress his claims Joyce denied him visitation with Jennifer. The record adequately supports the district court's finding of no contempt on the current show cause actions.

While we affirm the finding of no contempt on the pending contempt actions, we modify the trial court's decision to discharge the previously imposed suspended sentences. The record contains detailed findings of Joyce's contumacious behavior in 1992. She deliberately and repeatedly interfered with Dwayne's right to visitation. We do not take such conduct lightly, and we warn Joyce continued interference with Dwayne's visitation could constitute future grounds for modification of custody and placement of Jennifer in Dwayne's physical care. *See* Iowa Code § 598.41(1) (1993).

We believe the suspended sentences should continue in effect and Joyce should remain subject to incarceration if she fails to comply fully and in good faith with Dwayne's visitation rights. Unfortunately, the record suggests the imposition of actual jail time may be the only means by which Joyce will learn how imperative it is she comply with court orders and allow Dwayne his full legal rights of visitation. In reaching our decision on this issue, we express no opinion on the merit of contempt proceedings commenced subsequent to entry of the district court's November 1, 1993, findings and conclusions.

### V. *Appellate Attorney Fees.*

Joyce requests an award of appellate attorney fees. Such an award is discretionary and we consider various equitable factors in making this determination, including the parties' respective abilities to pay. *See In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987); *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). We conclude Joyce's conduct has precipitated many of the problems in this case and neither equity nor the parties' respective financial conditions warrants an award of appellate attorney fees to Joyce.

**AFFIRMED AS MODIFIED.**