**IN THE COURT OF APPEALS OF IOWA**

No. 16-1822
Filed April 5, 2017


**IN RE THE MARRIAGE OF JOANNA L. STANLEY
AND TYLER L. STANLEY**

**Upon the Petition of
JOANNA L. STANLEY, n/k/a JOANNA L. LINN,**
     Petitioner-Appellant,

**And Concerning
TYLER L. STANLEY,**
     Respondent-Appellee.
_____


Appeal from the Iowa District Court for Polk County, David M. Porter,

Judge.


The petitioner appeals the order modifying the child custody and support

provisions of the parties' dissolution decree. **AFFIRMED.**


S.P. DeVolder of The DeVolder Law Firm, Norwalk, for appellant.

Meegan Keller of Keller Law Office, Altoona, for appellee.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

Joanna Stanley, now known as Joanna Linn, appeals the modification of the decree dissolving her marriage to Tyler Stanley. She challenges the modification of the child custody provisions of the decree to grant Tyler sole legal custody and physical care of the children. She also challenges the trial court's calculation of her child support obligation and asks for an award of her trial and appellate attorney fees.

**I. Background Facts and Proceedings.**

Joanna and Tyler were divorced in September 2013. The terms of the dissolution decree, to which they stipulated, granted them joint legal custody of their two children and placed the children in Joanna's physical care. Under the parties' agreement, the decree provides that the children will remain in the Carlisle School District unless Joanna and Tyler mutually agreed to a change in enrollment.

The parties adhered to the custody arrangement until the summer of 2015. However, after Joanna moved to live with her boyfriend, Loren Cramblit, the parties' ability to communicate and co-parent eroded. In August 2015, Joanna enrolled the children in a different school district without Tyler's knowledge or consent, which prompted Tyler to initiate a contempt action. Ultimately, the court ordered the children remain in the Carlisle School District, found Joanna had violated the dissolution decree by withholding the children from Tyler and making unilateral decisions regarding the children, and ordered Joanna to serve a total of sixty days in jail. Although the court withheld mittimus provided that Joanna

allowed Tyler to make up his missed visits with the children, Joanna continued violating the decree and, as a result, served three days in jail.[1]

While the contempt action was pending, Tyler moved to modify the child custody provisions of the dissolution decree, requesting physical care of the children. Joanna cross-petitioned to modify the provisions of the decree regarding the children's schooling, how custody was to be exchanged, visitation, and child support. The court appointed a guardian ad litem for the children.

The modification action came to a hearing in July 2016. The guardian ad litem recommended that the court grant Tyler physical custody of the children. In its September 2016 order, the trial court modified the dissolution decree to grant Tyler sole legal custody and physical care of the children and ordered Joanna to pay $545.07 per month in child support. Joanna appeals.

**II. Scope of Review.**

We review orders modifying dissolution decrees de novo. *See In re Marriage of McKenzie*, 709 N.W.2d 528, 531 (Iowa 2006). In doing so, we give weight to the trial court's fact-findings, especially those concerning witness credibility, though we are not bound by them. *See id.* "We recognize that the district court 'has reasonable discretion in determining whether modification is warranted and that discretion will not be disturbed on appeal unless there is a failure to do equity.'" *See id.* (quoting *In re Marriage of Walters*, 575 N.W.2d 739,

---

[1] In March 2016, while the modification action was pending, Tyler requested the court issue mittimus regarding to the contempt finding based on Joanna's continuing violations of the decree. After a hearing, the court withheld mittimus but granted Tyler temporary physical care of the children. Joanna petitioned our supreme court for a writ of certiorari, arguing the district court abused its discretion by transferring custody of the children to Tyler and asking to stay the modification action. The supreme court denied the petition for writ of certiorari and the motion for stay.

741 (Iowa 1998)). We afford the district court "considerable latitude" in its determination "and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

**III. Custody.**

Before modifying the custody provisions of a dissolution decree, the court must find the parties' circumstances have substantially changed in a way the parties had not contemplated at the time of the decree's entry. *See In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998). The change must be more or less permanent and relate to the welfare of the child. *See id.* If a substantial change in circumstances is established, the party seeking modification must show the ability to minister more effectively to the children's needs. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

**A. Legal Custody.**

Joanna first argues the district court erred by modifying the decree to grant Tyler sole legal custody of the children.

Joint legal custody is preferred in Iowa. *See In re Marriage of Bartlett*, 427 N.W.2d 876, 878 (Iowa Ct. App. 1988) ("Our statutes express a preference for joint custody over other custodial arrangements."). However, joint legal custody requires parents to agree on basic decisions concerning their children's upbringing. *See In re Marriage of Miller*, 390 N.W.2d 596, 601-02 (Iowa 1986). Therefore, hostility and inability to communicate between the parents can have a severe impact on their children. *See id.* If the parents are unable to cooperate after joint legal custody is ordered, modification is appropriate. *See In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996).

Joanna and Tyler's inability to communicate and cooperate under a joint legal custody arrangement is a substantial change in circumstances that warrants modifying legal custody of the children. Joanna has demonstrated an unwillingness to work with Tyler regarding basic parenting issues. In fact, she has obstructed Tyler's ability to participate by denying him his scheduled visits with the children and by failing to consult with him on matters relating to the children. For instance, Joanna acted unilaterally to change the children's school district—in violation of the decree—and to decide it was unnecessary to provide therapy for the children. Her actions ultimately led the court in the contempt action to find Joanna was violating the provisions of the dissolution decree in multiple ways and in an ongoing manner.

Joanna has demonstrated her refusal to cooperate with Tyler in parenting the children by insisting on making custody exchanges as difficult as possible for Tyler, to the detriment of the children. She refused to allow Tyler to temporarily park his vehicle in her driveway or in the alley behind her home, and she claimed her neighbors refused to allow Tyler to briefly pull into their driveway for exchanges. As a result, Tyler was required to park a block and a half away. Joanna sent Loren to accompany the children, who were fourteen and nine years old. During these exchanges, Loren was aggressive and threatening toward Tyler. As the district court found based on "the testimony of the credible witnesses, *every* custody exchange is fraught with tension and peril." (Emphasis in original). Joanna's claims she was acting on her fear of Tyler, who she claims was abusive and stalked her, are not substantiated by the record.

The parties' correspondence also demonstrates Joanna's inability to communicate and cooperate with Tyler regarding the children. She failed to reply to multiple emails inquiring about extracurricular activities, as well as medical and dental concerns. In one reply, Joanna wrote to Tyler: "If I choose to sign [our child] up for any extracurricular activities, you will know about it. If your emails don't pertain to something important, I'll block you from my email too." When Tyler informed Joanna that he had scheduled a physical to allow their daughter to participate in sports, Joanna responded:

> Maybe you missed the part about me making the decisions about the kids & you no longer are controlling anything. I have primary custody of the kids & you have visitation. You know [our daughter] is not allowed to play sports until she's cleared & I will make the decisions on whether or not they're signed up for any extracurricular activities from now on. You can do what you want while you have them but that does not affect us at home. Unless you have [the children] & it's an emergency do not contact me again; I've already contacted my attorney & unless you only would like to correspond that way, this is the last time I'll tell you.

When Tyler replied by expressing their daughter's strong desire to play volleyball and his belief that their daughter should make the decision to play herself, Joanna responded:

> I disagree, per the divorce decree; neither parent is to make unilateral decisions involving sports. At this time I do not agree with either [child] participating in extracurricular activities. They should be picked up & dropped before and after school, given the appropriate drive time.
> From this point forward, your intimidation, harassment & control will need to go through a mediator at the court hearing . . . .

In another exchange, Tyler stated their son wanted to play basketball, provided her the information about signing up, and stated, "I am ok with him playing. Please let me know if you feel the same so we can get him signed up. Thank

you." In an email with the subject line "Dumbass," Joanna responded: "[Our son] hasn't brought or mentioned anything about basketball to me & we discuss these things regularly. Stop trying to control MY life & I'll let YOU know if he wants signed up for anything." In a later email, Joanna categorized Tyler's attempts to discuss the children's appointments and extracurricular activities as "nothing more than harassing [her]." Although these quotations are from a small sample of Joanna's emails to Tyler, they are representative of the overall tone of her correspondence with him.

The degree of conflict between the parties prevents them from co-parenting. Joanna's animosity toward Tyler permeates her interactions with him, which are filled with vitriol. She has ignored him and at times threatened him. Most importantly, Joanna has prevented Tyler from participating in decisions about the children. Therefore, the evidence is compelling, and it is in the children's best interests, to grant Tyler sole legal custody of the children. We affirm the modification of the legal custody provision of the dissolution decree.

**B. Physical Care.**

Joanna also challenges the modification of the custody provision of the dissolution decree to grant Tyler physical care of the children. For the reasons stated above, we find there has been a substantial change in circumstances warranting modification.

Our objective "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). The controlling consideration is the children's best interests. *See In re Marriage of Fennelly*, 737

N.W.2d 97, 101 (Iowa 2007). We note the legislature has defined the "best interest of the child" as including, but not limited to, "the opportunity for *maximum continuous physical and emotional contact possible with both parents*, unless direct physical or significant emotional harm to the child may result from this contact." Iowa Code § 598.1(1) (2015) (emphasis added). In making this determination, we look at the list of factors set forth in Iowa Code section 598.41(3), as well as those articulated in *Winter*. *See Hansen*, 733 N.W.2d at 696. Relevant here are the questions of "[w]hether the parents can communicate with each other regarding the child[ren's] needs" and "[w]hether each parent can support the other parent's relationship with the child[ren]." *See* Iowa Code § 598.41(3)(c), (e).

Ordinarily, the parent seeking to modify the physical care provision of a dissolution decree must prove "there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). That parent then "has a heavy burden and must show the ability to offer superior care." *Id.*; *see also In re Marriage of Spears*, 529 N.W.2d 299, 301 (Iowa Ct. App. 1994) (stating "once custody of a child has been fixed, it should be disturbed only for the most cogent reasons").

In determining that Tyler is better able to minister to the children's needs, the trial court stated:

> The court is wholly unimpressed with [Joanna]'s conduct over the past eighteen months. [Joanna]'s dishonesty, her willingness to create conflict with [Tyler], as well as her

willingness to embroil the children in this litigation is simply unacceptable. More troubling than [Joanna]'s conduct over the past eighteen months, is the documented negative shift in the children's demeanor.

This court finds it is no longer in the children's best interest to maintain the current physical care arrangement. The court also finds that [Tyler] can administer most effectively to the long-term best interests of the children and place them in an environment most likely to bring them to health, both physically and mentally, and to social maturity. While the children would benefit from regular contact with [Joanna], the court concludes [Joanna's] home environment is unstable, and the children's future in it would be uncertain. Consequently, it is not in their best interest to keep them there.

The trial court's concerns are amply supported by the record, and we share those concerns. Joanna clearly is unable to support the children's relationship with Tyler. She denied him the visitation she stipulated to in the dissolution decree. After she was found to have violated the decree, Tyler emailed Joanna asking her if he could have the children for three days of visitation to make up for the visitation she had denied him; her response was "Absolutely not." In another email, Joanna asserted her need to get what she categorized as Tyler's "controlling, harassing behavior" out of her and her children's lives, claiming, "You will try to control them the way you controlled me."

This court shares the district court's concerns about Joanna's relationship with Loren, who has a lengthy criminal history with convictions for domestic abuse assault. Loren has displayed aggression toward Tyler during custody exchanges and called the parties' daughter a "little bitch." It is no coincidence that the deterioration of Joanna's ability to co-parent with Tyler coincides with the beginning of her relationship with Loren. The children told the guardian ad litem that they fear Loren. After speaking with the parties' daughter in chambers, the

court found both she and the guardian ad litem to be "particularly credible when discussing the damage [Joanna] and [Loren] are causing." However, in spite of the obvious concerns about him, Joanna had no objection to allowing Loren around the children. Moreover, she indicated an unwillingness to abide by any court order preventing Loren from being around the children during visitation.

The record shows the Joanna's actions and decisions have negatively impacted the children. Tyler has shown a superior ability to put the children's needs first in order to act in accordance with their best interests. Based on this record, we affirm the modification of the dissolution decree to grant Tyler physical care of the children.

**IV. Child Support.**

Joanna also challenges the portion of the modification order requiring her to pay Tyler $545.07 per month for child support. Specifically, she argues the trial court erred in imputing income to her in the amount of $35,000 per year.

The court may impute income to a party based on that party's earning capacity upon finding "that a parent is voluntarily unemployed or underemployed without just cause." Iowa Ct. R. 9.11(4). We calculate earning capacity by "determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earning levels in the community, and other relevant factors." *Id.*

In determining the amount of child support Joanna should pay, the court noted Joanna was unemployed at the time of the hearing. However, in looking at her employment history, the court found Joanna was capable of earning $35,000

annually. Joanna disputes this finding, arguing she is unable to work because of her medical condition.

There is little evidence in the record concerning Joanna's medical condition. Joanna testified that her doctor placed her on medical leave in May 2014 due to herniation in her neck and chronic migraines and claimed her doctor had not yet released her to work. Joanna also testified that her migraines were now under control. She testified that she injured her back in January 2016 and underwent surgery for a lumbar fusion in May 2016. She claimed she had physical restrictions as a result of her surgery, testifying: "I cannot lift anything—not supposed to lift, push, or pull anything over ten pounds for the next six months. No bending, twisting. Not supposed to sit for long periods of time, and I have to walk daily."

On cross examination, Joanna was asked about the availability of social security disability benefits:

> Q. Why aren't you on disability? A. Because it's still going through the paperwork. It takes a long time.
> Q. When did you file for disability? A. I don't know the exact date.
> Q. Do you know the month? A. No.
> Q. Do you know the season? A. I know that it's in—I know that it's in determination stage right now.
> Q. Do you know the season that you filed for disability? A. No.
> Q. Whose attorney are you using? A. I haven't used one.
> Q. What year was it? A. The—2014.
> Q. So you filed for disability potentially up to two years ago and haven't heard anything? A. It's in determination. They said it could take up to three years.

Her testimony on this issue is simply not credible.

There is no medical evidence in the record to support Joanna's claims that she is currently unable to work. Without any such evidence before us, we affirm the determination of Joanna's child support payment using income imputed to Joanna based on her employment history.

**V. Attorney Fees.**

Finally, Joanna challenges the district court's award of $1000 in trial attorney fees to Tyler. She requests an award of her trial attorney fees. Both parties seek an award of their appellate attorney fees.

**A. Trial Attorney Fees.**

Joanna argues it was error to award Tyler $1000 in trial attorney fees because the court failed to consider Tyler's needs or her ability to pay. Because of her financial situation, Joanna requests that we order Tyler to pay her attorney fees instead.

The trial court in a modification action may award the prevailing party attorney fees in an amount the court deems reasonable. *See* Iowa Code § 598.36. In making this determination, the court must consider, in part, the respective abilities of the parties to pay. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). We will only overturn an award if the trial court abused its discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). In other words, the trial court's decision must rest on grounds that are clearly unreasonable or untenable. *See Smith v. Iowa State Univ.*, 885 N.W.2d 620, 624 (Iowa 2016).

In determining Joanna should pay $1000 of Tyler's attorney fees, the trial court noted Tyler was the prevailing party. It also considered Joanna's "limited

ability to contribute" to Tyler's attorney fees. The court then found that it was Joanna's conduct—"i.e., venomous communication flows *from* [Joanna] *to* [Tyler]"—that led Tyler to initiate the modification action. On this basis, the trial court found the $1000 award was "fair and reasonable." We find no abuse of discretion. Because Joanna was not the prevailing party, she is not entitled to an award of her trial attorney fees. *See* Iowa Code § 598.36; *In re Marriage of Mueller*, 400 N.W.2d 86, 89 (Iowa Ct. App. 1986) ("Considering the fact that Sharon was not successful in her application, we do not find an award of attorney fees proper at this time.").

**B. Appellate Attorney Fees.**

Both parties ask for an award of their appellate attorney fees. Whether to make such an award is within our discretion. *Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006). It depends on three factors: (1) the needs of the party making the request, (2) the ability of the other party to pay, and (3) whether the party making the request was obligated to defend the trial court's decision on appeal. *Id.*

Tyler is the prevailing party on appeal. He has a superior ability to pay attorney fees based on the parties' relative incomes and earning capacity. We note that Joanna has incurred a significant amount of trial attorney fees—both her own and some of Tyler's—during both the modification action and the contempt action. This situation is solely of her making. Joanna's ongoing pursuit of a court order finding in her favor, while simultaneously violating valid court orders, has led to this appeal. The irony is not lost on this court. Had Joanna adhered to the provisions of the decree to which she stipulated, there would have

been no basis for Tyler to have filed the contempt or modification actions and neither party would have incurred attorney fees.

Although Tyler has a superior ability to pay attorney fees, Joanna's actions prompted the litigation before us and Tyler was required to defend this appeal. Under the circumstances, we find it appropriate to order Joanna to pay $500 of Tyler's appellate attorney fees. Costs of this appeal are taxed to Joanna.

**AFFIRMED.**