In re the MARRIAGE OF Christine Ann ZABECKI and David Tadeusz Zabecki.

Upon the Petition of Christine Ann Zabecki, Appellee,

And Concerning David Tadeusz Zabecki, Appellant.

No. 84–1948.

Supreme Court of Iowa.

June 18, 1986.

Paul L. Macek, Davenport, for appellant.

Michael S. Bennett, Davenport, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, SCHULTZ, CARTER, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

The 1972 marriage between these parties was dissolved by a consent decree entered on May 9, 1984. The court awarded peti-

tioner Christine Ann Zabecki and respondent David Tadeusz Zabecki joint custody of Konrad, their only child born September 9, 1973, but provided that Christine should have his physical care. Four months later David applied for a modification of the decree, asking for Konrad's sole custody. Trial court denied the application. David appealed and we transferred the case to the court of appeals. That court reversed the district court decision by transferring the child's physical care to David. We granted Christine's application for further review, and now vacate the court of appeals decision and affirm the judgment of the district court.

The record reflects these parties, despite counseling efforts, were having difficulty with their marriage for some six years prior to the dissolution. This problem manifested itself in Christine's involvement in a series of extramarital affairs, several of which David knew about when he consented to placing Konrad's physical care with Christine. In September 1983 Christine moved out of the family home and filed the petition to dissolve the marriage.

David remained in the home with Konrad, who then was attending a private, non-parochial school, St. Katherine's-St. Mark's. After a social worker completed a court-ordered investigation and recommended Christine have sole custody, David voluntarily turned the physical care of Konrad over to Christine several weeks before the dissolution decree was signed.

The decree provided that Konrad's "[c]ontinued attendance at St. Katherine's-St. Mark's School is encouraged." It further provided the $120 per week child support David was ordered to pay covered his contribution toward Konrad's tuition and expenses, and "[i]f the child is removed from St. Katherine's-St. Mark's School, then the level of child support ... is subject to review and, if appropriate, reduction."

David's application for modification was joined with a petition for writ of injunction to require Christine to enroll Konrad in the same private school he had attended the prior year. In a separate hearing the court found the dissolution decree language only "encouraged" Konrad's attendance at St. Katherine's-St. Mark's; therefore it was precatory and nonbinding. Moreover, because the decree contemplated a reevaluation of the child support award if Konrad did not attend that school, the court found Christine's decision not to reenroll Konrad at St. Katherine's-St. Mark's was contemplated by the parties at the time the dissolution decree was entered. David did not appeal from that ruling.

In this separate proceeding on the modification application David complained, and offered evidence to show, that after the dissolution Christine unilaterally decided to enroll Konrad in a public school instead of St. Katherine's-St. Mark's for the next school year, and that her relationship with her current lover on at least one occasion involved her occupying the same bed with him while Konrad was in the house. There was evidence to show, and trial court found, Christine did not consult David in several decisions involving Konrad's activities. Christine produced evidence that David often used their communication efforts to berate her for her perceived shortcomings as a wife.

Although trial court did not grant the modification, it did reduce the child support award from $120 to $95 per week because Christine no longer had the expense of Konrad's private school tuition.

In reversing the district court by transferring Konrad's physical care to David, the court of appeals found David had met his burden to show that circumstances had substantially changed in a way not contemplated by the court rendering the dissolution decree. In this further review proceeding Christine asserts the court of appeals did not give weight to trial court's findings of fact and its opinion was in conflict with prior appellate decisions.

The briefs in this appeal present three issues: (1) Did circumstances substantially change in a manner not contemplated by the dissolution court so that Konrad's best interests make it necessary to modify the

custody arrangement? (2) Did trial court err in failing to reduce David's child support obligations by a larger amount? (3) Should Christine be awarded her appellate attorney fees and costs?

### I. *Custody issue.*

■ In this modification proceeding, we review the record de novo. *In re Marriage of Hubbard,* 315 N.W.2d 75, 80 (Iowa 1982). Because trial court was present to listen and observe the witnesses, we give weight to its findings. *In re Marriage of Behn,* 385 N.W.2d 540, 541 (Iowa 1986); *In re Marriage of Junkins,* 240 N.W.2d 667, 668 (Iowa 1976). We, however, are not bound by those findings.

The standards we apply in a modification proceeding are well established.

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983); *see In re Marriage of Bolin,* 336 N.W.2d 441, 443 (Iowa 1983); Iowa Code § 598.21(8) (1983).

■ We consider the factors found in Iowa Code section 598.41 in determining whether to modify a custody arrangement. *See Bolin,* 336 N.W.2d at 443, 445–46; Iowa Code § 598.21(8). Our focus, as stated above, is on the long-range best interests of the child. Those interests include the opportunity for a continuous relation-ship with both parents. Finally, the court is not attempting to reward or punish either parent when making a custody determination or modification. *Stouwie v. Stouwie,* 222 N.W.2d 435, 437 (Iowa 1974).

David's main concern is Christine's present relationship with Ron Russell. David knew she was having an affair with Russell before the dissolution and at the time he agreed that she should have Konrad's physical care. David nonetheless asserts there was a subsequent change of circumstances because the extent of the relationship and its effect on Konrad were not apparent at the time of the dissolution. Christine responds that this became a "problem" for Konrad only after David began to tell Konrad her conduct was unacceptable and wrong. The trial court, however, found no "evidence that indicates ... this conduct has in any way adversely affected Konrad."

■ We agree with trial court's further finding, however, that "taking the youngster to the boyfriend's home or elsewhere, ... where he knows his mother is in bed with a man to whom she is not married ... is not looked upon ... as acceptable social conduct, nor is it considered appropriate parenting." A parent's moral misconduct is a serious consideration in custody determinations. *Hagen v. Hagen,* 226 N.W.2d 13, 16 (Iowa 1975); *see In re Marriage of Morton,* 244 N.W.2d 819, 821–22 (Iowa 1976). This misconduct, however, is only one of several factors to be considered. It alone is insufficient to justify modification of custody determinations. *See In re Marriage of Mikelson,* 299 N.W.2d 670, 673 (Iowa 1980); *Hagen,* 226 N.W.2d at 16; *see also In re Marriage of Leyda,* 355 N.W.2d 862, 867 (Iowa 1984).

David also asserts Ron Russell is abusive to his children and that Konrad does not like him or his two sons. Konrad's testimony in this regard is supportive but inconsistent, and at the same time indicates he had discussed this alleged problem with his father. He admitted on cross-examination that he had gone to his mother and asked

that the Russell boys be invited to his last birthday party. A witness produced by Christine, who had opportunities to observe and whom trial court apparently believed, testified the relationship between Ron Russell and his children was loving, and the children were good and behaved well. She had seen Konrad and the Russell boys "play just like any other kids together" and had never seen them fighting.

There is substantial evidence that Christine changed Konrad's schools and withdrew him from competitive swimming without consulting David. The record indicates, however, that Konrad did not desire to continue with the competitive swimming and at the time of hearing was involved in flag football, scouts, and piano. Trial court was right in admonishing Christine for this failure to take David's wishes into consideration, and in warning her against a recurrence.

The legislature has defined joint custody as "an award of custody of a minor child to both parents under which *both parents have rights and responsibilities* toward the child and under which *neither parent has rights superior to those of the other parent.*" Iowa Code § 598.1(4) (emphasis added). In contrast, the legislature defined physical care in a much more limited manner. It is the "right and responsibility to maintain the principal home of the minor child and provide for the routine care of the child." *Id.* § 598.1(5). An award of physical care does not affect the other parent's rights and responsibilities as a joint legal custodian of the child. *Id.* § 598.41(4).

In 1984 the legislature amended Iowa Code section 598.41(4) to clarify that a joint custodial parent, who does not also have physical care, has equal rights and responsibilities to participate in the rearing of the child.

> Rights and responsibilities as legal custodian of the child include, but are not limited to, *equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.*

1984 Iowa Acts ch. 1088, § 5 (emphasis added); *see In re Marriage of Fish,* 350 N.W.2d 226, 230 (Iowa Ct.App.1984). This amendment was effective after this dissolution was entered but before David's application for modification was filed; it only clarified rather than changed the meaning of joint custody. *See Bolin,* 336 N.W.2d at 444; *Barnett v. Durant Community School District,* 249 N.W.2d 626, 629 (Iowa 1977).

The legislature obviously intended that joint custody be a framework for equal participation, with equal rights and responsibilities in the parenting of a child. The parent who does not have physical care of the child is not to be reduced to the role of a "favorite, visiting relative." *Bolin,* 336 N.W.2d at 447 (quoting *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa Ct.App. 1981) (Johnson, J., concurring specially)). When Christine excludes David from major decisions affecting Konrad, she is frustrating the purpose of joint custody. If this conduct continues, her uncooperative attitude may serve as a basis for concluding that circumstances have substantially changed and thus warrant a modification. *Cf. Spotts v. Spotts,* 197 N.W.2d 370, 372 (Iowa 1972) (The mother's conduct in depriving children of their right to see their father was a serious reflection on her capacity to maintain custody. A continuation of the same behavior would furnish a basis for modification.).

On the other hand, our de novo review of the evidence convinces us that David sought to use communications between these parties as an opportunity to berate Christine about her alleged failures as a wife, which accounts in part for her taking unilateral action concerning Konrad's activities. Further conduct by David of this kind, coupled with continued efforts to turn Konrad against his mother, might well support an application by Christine to secure sole custody.

■ Konrad, age eleven at the hearing, expressed a preference to live with his father, although also expressing love and affection for his mother. A child's prefer-

ence in custody determinations is given weight, although less weight may be given in modification proceedings. *Junkins,* 240 N.W.2d at 668–69; *In re Marriage of Woodward,* 228 N.W.2d 74, 76 (Iowa 1975). In assessing Konrad's testimony, trial court found that Konrad actually believed he wanted to live with his father. The trial court, however, questioned his motivation for this desire:

> The court is left to wonder if Konrad might not be feeling the need to gain favor with his father by expressing a desire to live with him. It is possible that, without realizing it, Konrad subconsciously sees that he cannot measure up to his father's expectations and demands of him by way of performance and hopes to substitute a siding with his father as an accomplishable avenue of gaining his love and affection.

The inference trial court made finds support in the report and testimony of the social worker. Her perceptive and sensitive nine-page report, admitted into evidence in this proceeding, details David's rigidly structured plans for Konrad and opines David "may have difficulty at the present time seeing his son as separate from himself." A portion of her conclusion states:

> David and Christine Zabecki demonstrated a strong desire to parent their minor child, Konrad. Both parents are interested in and involved with the child. Both would like to provide a nurturing atmosphere in which Konrad can grow. It was evident that both parents feel a strong bond with Konrad and he appeared equally fond of both of them. However, Konrad appeared to be under pressure to present Mr. Zabecki in a positive frame during the office interview and the visit to Mr. Zabecki's home. In contrast, Konrad appeared relaxed and affectionate in his mother's home. This seems consistent with what I observed to be Mr. Zabecki's sometimes strong identification of Konrad with himself and his occasional judgmental and controlling attitude toward some of Konrad's traits and behaviors. Mrs. Zabecki appeared to be better able to perceive Konrad independently and to be tolerant and accepting of him.
>
> Mrs. Zabecki appeared generally positive and tolerant of Mr. Zabecki despite their marital differences. Mr. Zabecki appeared unable to be positive regarding Mrs. Zabecki in any respect because of her departure from the marriage. Mr. Zabecki declined to engage in discussion about allowing Konrad generous access to both parents after divorce. He gave the appearance of being unable to separate Mrs. Zabecki's parental abilities from her role as his wife.
>
> His willingness to foster a positive relationship between Konrad and Mrs. Zabecki is dubious in view of his descriptions of Mrs. Zabecki as unstable and his statements that it is his duty to tell Konrad what his mother is doing is wrong.

The social worker's follow-up in preparation for her testimony and recommendation in this hearing left her perceptions and opinion unchanged.

It is apparent trial court findings turned on its assessment of the credibility of the witnesses, including the parties and the social worker. Such assessment as a tool in reaching a sound decision is entitled to our close attention because we are denied the impression created by the demeanor of the witnesses during presentation of evidence. *See In re Marriage of Vrban,* 359 N.W.2d 420, 423 (Iowa 1984); *Lehmkuhl v. Lehmkuhl,* 259 Iowa 686, 692, 145 N.W.2d 456, 460 (1966).

Our examination of this record leaves us with the same impression that trial court developed: David is a rigid and domineering individual who would put Konrad on a demanding "minute-by-minute … schedule." There is ample proof that David has attempted to utilize Konrad in his continuation of antagonisms generated out of the dissolution. We disapprove of this conduct. *See Mikelson,* 299 N.W.2d at 673. There also is strong evidence David discussed with Konrad the latter's proposed testimony at the hearing. This was direct-

ly confirmed by Konrad and was reflected in his answers. We question whether any eleven year old, unprompted, would volunteer to the judge, "[C]hildren have a little better way of putting things; and ... I think I have the right to be heard." To her credit, we find no indication Christine sought to turn Konrad away from his father, or attempted to control his hearing testimony.

 We agree with the district court that David has not carried his heavy burden to show a substantial change of circumstances that would justify a custody change, nor has he demonstrated an ability to minister more effectively to Konrad's well-being. We leave this issue with the reinforced admonition to both parties to modify their behavior in conformance with trial court's decision and this opinion if further costly and traumatic litigation is to be avoided.

## II. *Child support issue.*

At the modification hearing, both parties agreed to a reduction in child support. Consequently, trial court reduced David's obligation by twenty-five dollars, to ninety dollars per week. In his appellate brief, David asserts trial court erred in failing to reduce his child support obligation by a greater amount. He asked us to reduce his support obligation to eighty dollars per week.

■ The child support issue was not presented in Christine's application for further review nor in David's resistance. Our review, however, is not limited by the application. We have discretion to consider all issues that were presented on appeal. *Shivvers v. Mueller*, 340 N.W.2d 586, 588 (Iowa 1983); *see State v. Lucas*, 368 N.W.2d 124, 128 (Iowa 1985). In this situation, we do not choose to exercise that discretion.

## III. *The attorney fees issue.*

In her appellate brief, Christine asked us to award her attorney fees and costs on appeal. The court of appeals did not pass

on this issue. Nor was this issue raised in her application for further review. We therefore decline to address it now.

We do, however, tax each of the parties with fifty percent of the costs on appeal. Although Christine is the prevailing party, her appellate brief was not printed on both sides of the page in violation of Iowa Rule of Appellate Procedure 16(a). *See Rhiner v. City of Clive*, 373 N.W.2d 466, 478 (Iowa 1985).

DECISION OF COURT OF APPEALS VACATED AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except HARRIS, J., who dissents.