# IN THE COURT OF APPEALS OF IOWA

No. 14-1760
Filed May 6, 2015

IN RE THE MARRIAGE OF NEIL JAMES PRUSSMAN
AND KAREN M. PRUSSMAN

Upon the Petition of
**NEIL JAMES PRUSSMAN,**
      Petitioner-Appellee,

**And Concerning**
**KAREN M. PRUSSMAN, n/k/a**
**KAREN M. DENISON,**
      Respondent-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Stuart P.

Werling, Judge.

Karen Denison appeals the district court order modifying placement of the

parties' minor child.  **REVERSED.**

Robert M. Hogg of Elderkin & Pirnie, P.L.C, Cedar Rapids, and John E.

Wunder of Wunder Law Office, Muscatine, for appellant.

Robert H. DeKock of DeKock Law Office, P.C., Muscatine, for appellee.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, J.**

Karen Denison appeals the district court's order modifying the decree of dissolution granting Neil Prussman joint physical care of their child, B.P. She claims the district court should not have modified the decree as Neil failed to show a "substantial change in circumstances" or that he could provide "superior care" to B.P. We find Neil has failed to carry his "heavy burden" to meet these standards. We reverse.

## I. BACKGROUND FACTS AND PROCEEDINGS

The marriage between Neil and Karen was dissolved by agreement in 2010. Their only child, B.P., was born in 2002 and was seven-years-old at the time of the divorce. The parties stipulated to joint legal custody of B.P. and Karen was granted physical care subject to reasonable visitation. The decree also provided Neil would pay $171.92 in weekly child support.

We incorporate the district court's findings concerning the parties since the dissolution decree was entered:

> B.P. is a remarkable young man. He has been in the Talented and Gifted Program at his school shortly after enrollment. In fact, he was advanced from the first grade to the third grade due to his excellent academic performance. This performance has continued throughout his academic career. Currently, B.P. is in the sixth grade. He was recently tested at the Belin-Blank Center in Iowa City where he was in the 90th percentile of all eight graders who took the test at the same time. Again, B.P. was a sixth grade student in Muscatine at the time he took this test. The results of this test show that B.P. is an excellent academic student as compared to his peers. Both parents agree. They describe their son as "remarkable." Not only is he a superior student academically, he is involved in jazz band, concert choir, and athletics. Additionally, B.P. is described as a kind, helpful and considerate person who is always willing to lend a hand where

needed. It is clear to the Court that B.P. is a special young man with unlimited potential to achieve a very bright future.

Mr. Neil Prussman and Ms. Karen Denison both continue to live in the same community in which B.P. was born. In fact, they live in the same middle school district where B.P. now attends school. The parties' homes are only a few blocks from one another, and B.P. cannot only walk to and from school from either parent's home, he can walk to and from each parent's home as well. Further, both parents are active members of the same church in Muscatine. Finally, it is clear beyond any question or doubt that both the mother and father deeply love B.P. and wish the best for him.

Karen's employment situation has not changed dramatically since the entry of the decree. She continues to work part-time hours of about twenty hours per week. Karen testified that she limits her employment hours so that she can spend more time with her son and Court accepts this testimony as truthful.

Neil's employment situation has changed, however. At the entry of the decree, Neil was working a swing shift for GPC in Muscatine, Iowa. Neil testified that originally his work schedule was a swing shift of twelve hours. He would work two twelve hour days and then have two days off. He would then work three twelve-hour days and have three days off. Then he would work two twelve-hour nights followed by three days off. This pattern would then repeat. Neil testified that this swing shift made a regular consistent schedule of visitation with B.P. very difficult to plan. Therefore, he exercised his visitation mainly on the weekends. The Court finds this testimony to be truthful as well.

. . . .

Both Neil and Karen have remarried. Karen has no additional children in her home other than her son, B.P. However, Neil's new wife has two sons who are close in age to B.P. B.P. testified his relationship with his step-brothers is warm and cordial and he enjoys being with them and doing the kinds of things that young boys do.

On December 10, 2013, Neil filed an application for modification of the dissolution decree requesting physical care, or in the alternative, joint physical care. In his application, Neil claimed the following constituted a "substantial change in circumstances to justify a modification: the change in his work schedule, B.P.'s desire to live with both parents on an equal basis, and Karen

and her new spouse's smoking cigarettes and exposing[1] B.P. to second-hand smoke.

A hearing was held on September 8 and 9, 2014. Relying on B.P.'s request for equal time with his parents, and Neil's change in work schedule, the court found joint physical care was in B.P.'s best interest and modified the decree. The court awarded Karen $1000 in attorney fees (due to the parties' income disparity), and reduced Neil's child support obligation to $420.01 per month. Karen filed a motion to amend or enlarge the court's ruling, noting the court did not make specific findings concerning whether Neil had shown the requisite change in circumstances or that he could provide superior care to B.P. Karen claimed the change in Neil's work schedule could justify a change in visitation, but not a modification to the custody provisions in the decree. The district court denied Karen's motion. Karen now appeals

## II.    STANDARD OF REVIEW

This modification action was tried in equity, and our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006). However, we give weight to the trial court's findings because it was present to listen to and observe the parties and witnesses. *In re Marriage of Zebecki*, 389 N.W.2d 396, 398 (Iowa 1986); *see also* Iowa R. App. P. 6.904(3)(g). As a part of our de novo review, we give little precedential value to past cases and instead focus on the particular circumstances of this case. *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

---

[1] Karen testified that any smoking is done outside away from B.P.

III.     **ANALYSIS**

A.      **Modification**

Karen claims the district court ruling should be reversed as Neil's change in work hours and B.P.'s preference is not a "substantial change in circumstances." Karen also claims Neil failed to show he could provide superior care to B.P.

The objective of physical care "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Changing physical care of children is one of the most significant modifications that can be undertaken. *In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). The parent seeking to modify the physical care provision of a dissolution decree must prove "there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). In addition, the parent seeking to modify physical care has a "heavy burden" and "must show the ability to offer superior care." *Id.*; *see In re Marriage of Spears*, 529 N.W.2d 299, 301 (Iowa Ct. App. 1994) (stating "once custody of the children has been fixed, it should be disturbed only for the most cogent reasons"). The controlling consideration is the child's best interest. *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).

Upon our de novo review of the record, we agree with Karen that Neil failed to carry the burden of showing a "substantial change" in circumstances or that he can provide "superior care" to B.P. Based on the testimony presented, the change in Neil's work schedule does not constitute a "substantial change in circumstances" to justify altering the custody arrangement. While the change in Neil's schedule allows him to spend more time with B.P., this is a change that was within the contemplation of the court when it entered the decree. "The original decree is entered with a view to reasonable and ordinary changes that may be likely to occur in the relations of the parties. Any changes in the circumstances that are 'natural occurrences and as such could be foreseen by the [c]ourt' will not justify modification." *In re Marriage of Chmelicek*, 480 N.W.2d 571, 574 (Iowa Ct. App. 1991) (citing *Mears v. Mears*, 213 N.W.2d 511, 514 (Iowa 1973)). Neil's new work schedule is a natural occurrence and not a substantial change. In fact Neil testified the change in his schedule was done by his employer without Neil's input and could be changed again if his employer chose to do so.

Neil also failed to show, and the district court failed to make a finding, that Neil could provide superior care to B.P. Most of the testimony at the hearing focused on B.P.'s accomplishments and talents. The record shows B.P.'s success can be primarily attributed to Karen's conscientious parenting and the fostering of B.P.'s unique abilities. While Neil has taken a larger interest in parenting B.P. since the entry of the decree, a desire to spend more time with a child is not the same as demonstrating the ability to provide superior care. Given

the fact B.P. has excelled in his mother's care, Neil has a heavy burden to show he can improve on Karen's great effort. Neil has not met this burden.

Finally, we note B.P.'s preference to spend equal time with both parents does not constitute a "substantial change" to warrant modifying the decree. We give less weight to B.P.'s preference in this modification action than we would if this were the original custody decision. *In re Marriage of Jahnel*, 506 N.W.2d 473, 475 (Iowa Ct. App. 1993). However, a minor child's preference as to which parent he wishes to live with, although not controlling, is relevant and cannot be ignored. Iowa Code § 598.41(3)(f) (2013) ("Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity."). B.P. is highly intelligent and mature for his age. However, he is an eleven-year-old child. His testimony establishes he is happy with this mother's care, and with his step-father.[2] The evidence shows the physical care arraignment should not be modified.

## B. Appellate Attorney Fees

Karen requests appellate attorney fees. An award of attorney fees is not a matter of right and rests within our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We determine whether an award is appropriate considering the needs of the party seeking the award, the other party's ability to pay, and whether the appeal required a party to defend the district court's decision. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).

---

[2] Much of B.P.'s testimony discussed his enjoyment in spending time playing with his two step-brothers at his father's house.

With these considerations in mind and the large disparity in the parties' incomes we award Karen $4000 in appellate attorney fees.

## IV.  CONCLUSION

Based on the facts presented, the change in Neil's work schedule and the preferences of B.P., an eleven-year-old child (no matter how intelligent or mature), do not constitute a "substantial change in circumstances" to meet the "heavy burden" necessary to modify a child custody arrangement.  Additionally, Neil has failed to show he could provide "superior care" to B.P.  We reverse the district court's order modifying the placement of the parties' minor child.

**REVERSED.**