# IN THE COURT OF APPEALS OF IOWA

No. 15-0842
Filed January 13, 2016

**Upon the Petition of**
**NICHOLAS R. MYERS,**
          Petitioner-Appellee,

**And Concerning**
**AMBER L. SMITH,**
          Respondent-Appellant.
_____

          Appeal from the Iowa District Court for Clinton County, Nancy S. Tabor,

Judge.


          Amber Smith appeals from the decree placing the parties' child in Nicholas

Myers' physical care.  **AFFIRMED AS MODIFIED.**



          Adrienne C. Williamson of Pillers & Richmond, Clinton, for appellant.

          Jennifer Olsen of Olsen Law Firm, Davenport, for appellee.



          Considered by Danilson, C.J., and Mullins and McDonald, JJ.  Tabor, J.,

takes no part.

**DANILSON, Chief Judge.**

Amber Smith appeals from the decree judicially establishing paternity, awarding the parties joint legal custody, and placing the parties' now four-year-old child in Nicholas (Nick) Myers' physical care. Nick lives in Virginia and the trial court ordered the parties split the cost of transportation for parenting time and ordered Amber to pay fifty dollars per month in child support.

Amber contends the trial court erred in placing the child in Nick's physical care and it is in the child's best interests to be in her care.

Issues ancillary to a determination of paternity are tried in equity. *Markey v. Carney*, 705 N.W.2d 13, 20 (Iowa 2005). We review equitable actions de novo. Iowa R. App. P. 6.907. When we consider the credibility of witnesses in equitable actions, we give weight to the findings of the district court, but are not bound by them. Iowa R. App. P. 6.904(3)(g).

Upon our de novo review, we agree with the trial court that this case is a "close call." Two young and immature people had a brief relationship, which resulted in the birth of a child in 2011. Paternity was established by blood tests shortly after the child's birth, and Nick was involved with the child for several months. Amber acknowledged she had more emotional investment in a relationship with Nick than was reciprocated. Nick joined the Navy, and that decision resulted in his being stationed in Virginia. Matters became more complicated when Nick married Jennifer in 2012.

We adopt these findings of the trial court as our own:

> After Nick learned of the pregnancy, he enlisted in the U.S. Navy, completed basic training and has been assigned to a naval

base in Virginia since. He is a G4 Gunner's Mate. He married his current wife in April of 2012.

Amber has remained in the Clinton area and has had sole custody of the minor child, now [three and one-half] years old. She worked full-time and went to community college until recently when she quit her job. She testified that she will graduate with her Associates of Science degree next month in May of 2015. She testified that she intends to take some summer classes to earn her Associates of Arts as well. She further testified that she hoped to continue her education to earn a four-year degree in psychology.

. . . .

Amber's character is . . . shown in her continued disdain and negative progression as to Nick. She has gone from insisting he terminate his parental rights on more than one occasion, to texting Nick's loved ones that she hopes that he gets blown up while deployed. While these statements have not been made for over a year, they were made even after Amber knew that Nick and his wife wanted to establish a relationship with the child. These statements are a clue to Amber's character and behaviors where Nick is concerned. Amber continued to disavow Nick as entitled to information about his son. Amber refused to provide Nick with the child's social security number so that Nick could list the child as a beneficiary on his insurance and list him as a dependent for military benefit purposes. She also refused to give Nick her address after she moved. These actions were clearly selfish as to Amber's needs and harmful to the child's needs. Amber has consistently put her desires and needs above those of the child where Nick is concerned.

Further, based on Amber's inconsistent testimony about her support system, the fact that her mother has now moved to Monroe, Wisconsin, to live with her boyfriend and Amber's past behaviors and history of denying visitation, the Court finds that there is a realistic possibility that Amber will continue to defy court orders and contact with Nick when it suits her desires or purposes. Amber presents herself as still quite immature in her life choices.

Nick has, on the other hand, grown up. He has excelled in his military career. He has had a steady marriage for over two years. He has consistently paid his child support according to court orders. He has a stable home and has looked into possible school and daycare situations.

Nick has faults and does allow his anger and disdain of Amber to get in the way of communication and does put Jennifer in the position of having to communicate for him. This only adds fuel to a fire between the two women that is already ignited.

Nick's relationship with the child at this point is not as strong as the child shares with Amber. However, this can be attributed to

several factors, such as the distance between the residences, Amber's lack of allowing contact and frustrating contact, Amber's supervision of the visits for no apparent reason, and Amber's lack of showing respect for Nick to the child. Amber always refers to Nick as "Nick" to the child and never corrects the child when he does not refer to Nick as "dad." Amber admitted that she tells the child he can call Nick whatever he wants to. The child was reported as saying "Mom said I had to call you Nick" and "my mom said I can't like you." Further, by Amber being present during the visits, this relays the unspoken feeling to the child that Nick is not to be trusted without Amber being there. This does not foster a good and trusting relationship with Nick.

Considering all the good and bad points of both parents, the Court finds that Nick has the better ability to provide the environment most likely to bring the child to healthy physical, mental and social maturity and provide for the long-term needs of the child.

Amber contends we should not give any weight to the trial court's fact findings or credibility determinations. The court gave cogent reasons for its credibility findings, and we will not ignore them. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 400 (Iowa 1986) ("It is apparent trial court findings turned on its assessment of the credibility of the witnesses, including the parties . . . . Such assessment as a tool in reaching a sound decision is entitled to our close attention because we are denied the impression created by the demeanor of the witnesses during presentation of evidence.").

We acknowledge that Amber has been the primary physical caregiver for the child and that ordinarily this factor is given great weight. On the other hand, the evidence establishes that she has stymied attempts by Nick and his wife to have a relationship with the child. Amber has refused to provide the child's social security number so Nick could designate the child as a beneficiary, asked Nick to give up his parental rights on more than one occasion, refused to provide Nick

with her most current address, defied court-ordered visitation, and has taught the child to call Nick by his first name. We acknowledge that Amber denies such actions or attempts to explain them away, but there are simply too many troubling facts to accept all of Amber's explanations.

The trial court recognized that moving the child's care to Nick would require an adjustment for the child, but determined any "resultant emotional trauma is less than the long-term effects of keeping the child with the mother who does not support the child's relationship with his father and fosters disrespect and fear of the father in the child." We affirm the order placing the child in Nick's physical care.

Amber argues Nick should be solely responsible for transportation for visitations. Generally, parents are to share the cost of transportation. *See In re Marriage of Bonnette*, 492 N.W.2d 717, 722-23 (Iowa Ct. App. 1992); *see also, e.g., In re Marriage of O'Reagan*, No. 08–0591, 2009 WL 606136, at *3 (Iowa Ct. App. Mar. 11, 2009) (requiring transportation costs to be shared). Nick did not move from the state of Iowa for reasons to disrupt Amber's relationship with their child but rather because of his military service. However, Amber's income is limited as she is currently unemployed and attending school. During her last employment she was earning an hourly wage of about $11.30 per hour. We conclude that Nick will be responsible for transportation expenses for two years following entry of this opinion. This two-year time frame will permit Amber time to conclude her schooling and become gainfully employed so she is in a position

where she can contribute to the transportation costs. Thereafter, the transportation expenses will be shared equally between Amber and Nick.

Costs of appeal are taxed equally to both parties.

**AFFIRMED AS MODIFIED.**