, MANSFIELD, Justice
(dissenting).
I respectfully dissent. T would defer to the findings and conclusions of the district judge who saw and heard this proceeding firsthand and who declined to modify physical care. See In re Marriage of Ford, 563 N.W.2d 629, 631 (Iowa 1997) (“In assessing a custody order, we give considerable weight to the judgment of the district court, which has had the benefit of hearing and observing the parties first-hand.”). In my view, the thoroughness of the district court’s order speaks for itself.
This court has repeatedly said that “once custody of children has been fixed it should be disturbed only for the most cogent reasons.” In re Marriage of Hoffman, 867 N.W.2d 26, 32 (Iowa 2015) (quoting In re Marriage of Frederici, 338 N.W.2d 156, 158 (Iowa 1983)); In re Marriage of Udelhofen, 444 N.W.2d 473, 474 (Iowa 1989) (same); In re Marriage of Zabecki 389 N.W.2d 396, 398 (Iowa 1986) (same): In this case, Angela filed for modification just eleven days after our affir-mance of the original dissolution decree became final. Following a three-day trial, the district court denied modification. Now the court reverses the trial court’s denial of modification. I fear that the effect of this decision will be the opposite of what the court intends — namely, it will encourage more petitions for modification.
I think my colleagues overstate the matter considerably when they say that joint physical care in this case has been an “abject failure.” With hindsight, one might argue that giving one parent primary physical care would have been preferable, or at least that a back-and-forth 2-2-3 arrangement should have been avoided. But I do not see the catastrophe that the majority perceives.
The major issue is the daughter’s medical diagnosis and treatment. Kavalier & *447 Associates and, the University of Iowa have different views. The district. court heard directly from Dr. Kavalier and was skeptical about his diagnosis and course of treatment. Unlike Dr. Kavalier, the University of Iowa found that the child was not in the autism spectrum but mainly had some deficits in social skills. Reviewing the record in its entirety, the latter assessment seems entirely plausible/ Notably, this thirteen-year-old girl made clear to , the custody evaluator that she liked the existing joint physical care arrangement and wanted to continue it. ■:
The remaining issues are less substantial. Because of unacceptable behavior, the son was asked to leave daycare two years before the modification hearing. He was allowed to transfer to another daycare run by the same company. By the time of the modification hearing, he was doing well at kindergarten in public school.
The acrimony between Angela and Pa-trie is undeniable and unfortunate. But I think the court is perhaps somewhat naive when it criticizes ex-spouses for communicating primarily by email. I would also hesitate to infer too much from the testimony of Angela’s paramour that Patrie is rude and uncommunicative when the’children are exchanged in the paramour’s presence. The district court did not deem that testimony significant enough to mention in its detailed ruling.
Lastly,-the court brushes past an important point emphasized by both the district judge who heard the initial dissolution proceeding and the judge who heard the modification — namely,. Angela’s ongoing tendency to make unilateral decisions on matters such as schooling, extracurricular activities, and medical care when the existing orders required advance notification. As noted by the district court below, “Instead of changing her behavior after the decree was entered to comply with its terms, Ms. Harris ,has continued with the same behavior and- now seeks a modification to accommodate that behavior.”
I agree with the district court that both of these parents love their children and that the children’s needs are generally being met. Under the standards established by this court, there has been no showing of a substantial change in circumstances that was not within the contemplation of the court when the decree was entered. See Zabecki, 389 N.W.2d at 398. I would affirm.
WATERMAN, J., joins this dissents