# IN THE COURT OF APPEALS OF IOWA

No. 19-0724
Filed March 18, 2020

**JARED THOMAS CRANK,**
 Plaintiff-Appellant/Cross-Appellee,

**vs.**

**JESSICA ANNE-MARIE WINTERS,**
 Defendant-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Allamakee County, John J. Bauercamper, Judge.

Parties appeal and cross-appeal the modification of a custody decree.
**AFFIRMED ON BOTH APPEALS.**

Jeremy L. Thompson of Putnam & Thompson Law Office, P.L.L.C., Decorah, for appellant.

Kelsey Deabler and Joseph G. Basque of Iowa Legal Aid, Council Bluffs, for appellee.

Considered by Vaitheswaran, P.J., Mullins, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MULLINS, Judge.**

Jared Crank appeals, and Jessica Winters cross-appeals, the modification of a custody decree concerning the parties' minor child, R.C., born in 2013. Jared argues the court erred in increasing Jessica's visitation because Jessica only requested modification of physical care.[1] Jessica contends the court erred in denying her request for modification of physical care.

## I.       Background Facts and Proceedings

The parties have never been married. They are the parents of R.C., born in 2013. The parties ended their relationship sometime in 2014. Jessica alleges the relationship was fraught with controlling tendencies and domestic violence on the part of Jared. The end of the relationship was detrimental to Jessica's mental health. In September 2014, Jared filed a petition under Iowa Code chapter 600B (2014), requesting the court to enter a decree awarding the parties joint legal custody with physical care to Jared. In May 2015, upon the parties' agreement, the court granted the parties temporary joint legal custody and shared physical care. In October, Jared moved for modification of the temporary order, citing Jessica's hospitalization following a suicide attempt, and requesting Jessica only be allowed limited supervised visitation. In November, the parties filed a stipulation to modifying temporary custody and physical care, in which they agreed the child would be placed in Jared's physical care and Jessica's visitation would be lessened and supervised.

---

[1] Jared does not otherwise argue the evidence was insufficient to support modification of the visitation provisions of the decree or challenge the propriety of the visitation schedule imposed.

In February 2016, the parties stipulated to permanent joint legal custody with physical care being granted to Jared. At this point in time, Jessica was unemployed and lived in an apartment. The parties also agreed Jessica would initially be allowed eight hours of supervised visitation every other weekend.[2] Jessica would be entitled to less restrictive visitation if she provided Jared with documentation from her counselor that demonstrated she was engaging in recommended treatment and did not pose a threat to herself or others. After Jessica demonstrated competency with unsupervised visitations, she would be entitled to visitation every other weekend, from Friday evening to Sunday evening. The parties' stipulation also allowed Jessica holiday visitation, but directed that said visitation be supervised until Jessica met the foregoing conditions. The court entered a decree approving the parties' stipulation.

In May, Jessica moved for unsupervised visitation and alleged she met the conditions for the same but Jared would not agree to lessening the restrictions on visitation. Jared responded with an application for rule to show cause alleging Jessica engaged in unsupervised visitation over his objection.[3] Following a hearing on Jessica's motion, the court entered an order denying Jessica's request for unsupervised visitation upon its conclusion Jessica failed to meet the conditions for the same.

---

[2] Jessica could elect to do either two four-hour visits on Saturday and Sunday or one eight-hour visit on either day. She could also elect to do one or both of her four-hour visits on weekdays so long as Jared and the child were reasonably available and the request for weekday visitation could be accommodated.

[3] Jared subsequently withdrew his application

Jessica continued to suffer from depression. Sometime later in 2016, she sought medical treatment and was diagnosed with hypothyroidism. She explained at trial that the condition causes hormonal imbalances, which resulted in her mental-health issues.[4] She now undergoes regular blood assessments, and her medication regulates her hormones. Her treatment has completely resolved her mental-health issues. While Jessica continues to suffer from anxiety, she finds meditation a successful remedy for her symptoms. At some point, Jessica met the conditions to progress to unsupervised and expanded visitation.

In May 2017, Jessica filed a petition for modification of the custody decree, alleging the following changes in circumstances necessitated modification of the physical care arrangement: (1) Jared's interference with and lack of support for Jessica's relationship with the child, (2) Jessica moving into the same school district as Jared, (3) Jared's alleged failure to address the child's developmental delays, and (4) the resolution of Jessica's mental-health issues. Jessica requested she be awarded physical care. She also requested "such other and further orders as the court deems appropriate." In his amended answer, Jared requested an award of sole legal custody, alleging Jessica's harassing and oppressive conduct was not conducive to a joint legal custody arrangement.

Following nearly two years of heated pretrial litigation, the matter proceeded to trial in February 2019. At the time of trial, Jessica was twenty-seven years old. She had been living in her own residence with her other son, then one-year old,[5]

---

[4] Jessica had previous mental-health diagnoses.
[5] Jessica was not in a relationship with the child's father. At the time of trial, Jessica had temporary physical care of the child, pending a trial in the coming months.

for more than two years. R.C. and his half-sibling are bonded. Jessica's home is located roughly four blocks away from R.C.'s school and fifteen or twenty minutes from Jared's residence. Jessica works thirty to forty hours per week as a receptionist and is allowed flexibility in her schedule. Jessica had previously been assessed by a therapist, who opined Jessica did not present "any mental health issues that would interfere with [her] ability to parent." As noted, Jessica had progressed to unsupervised visitation, and she was exercising parenting time every other weekend from Friday evening to Sunday evening and on her holidays. Since the entry of the decree, Jessica has voluntarily participated in services to enhance her stability and parenting abilities.

At the time of trial, Jared was thirty-two years old. He and the child live with Jared's parents. He typically works forty to forty-five hours per week in his full-time employment. He also has his own side business, in which he occasionally works on the weekends. When R.C. is not in school and Jared is working, Jared leaves him at home with his paternal grandmother.

Following the two-day trial, the court concluded both parties are able to provide suitable care for the child but Jessica failed to meet her burden for modification of physical care, namely that she failed to show a superior ability to care for the child. However, the court modified the visitation provisions of the decree to provide Jessica expanded visitation. Jared filed a motion to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2), arguing the court was without authority to modify visitation because Jessica did not specifically request the same. The court denied the motion. As noted, both parties appeal.

**II.     Standard of Review**

Appellate review of an equitable action to modify the physical-care or visitation provisions of a custody decree is de novo.  *See* Iowa R. App. P. 6.907; *Christy v. Lenz*, 878 N.W.2d 461, 463 (Iowa Ct. App. 2016); *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002); *see also In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them.  Iowa R. App. P. 6.904(3)(g).  The best interest of the child is our primary consideration.  Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

**III.     Analysis**

A.     Physical Care

We first consider Jessica's claim on cross-appeal, that the district court erred in declining to modify the physical care provisions of the custody decree.  The following principles apply to modification of the physical-care provisions of a custody decree:

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the [child's] best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the child[].  A parent seeking to take custody from the other must prove an ability to minister more effectively to the [child's] well being.  The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Assuming without deciding Jessica met her burden to show a sufficient change in circumstances, we turn to whether Jessica met her burden to show she has a superior ability to minister the child's wellbeing. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); *Frederici*, 338 N.W.2d at 158. Our primary consideration in making this determination is the long-term best interests of the child. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 395 (Iowa 1986). "Prior cases are of little precedential value, except to provide a framework for our analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995). "The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3)." *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Court App. 1996). "Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, . . . the factors listed here as well as other facts and circumstances are relevant in determining" physical care. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). "In determining which parent serves the child's best interests, the objective is to place the child in an environment most likely to bring the child to healthy physical, mental, and social maturity." *Courtade*, 560 N.W.2d at 38.

In support of her position that she harbors a superior ability to provide for the child's wellbeing, Jessica argues the court "failed to give sufficient weight to [Jared's] neglect of the child's medical and social needs" and "failed to give sufficient weight to [Jared's] frustration of the bond between [Jessica] and the child."

The evidence was highly conflicting as to Jessica's allegations that Jared has failed to adequately address the child's medical needs. The child suffers from food protein induced enterocolitis syndrome, which requires he be on a specialized diet. According to Jessica, Jared believes the diagnosis is made up. But, Jared acknowledged in his testimony the child suffers from a food allergy. Jessica also complains Jared does not adequately attend to the child's other generic medical needs, such as taking him to the doctor or keeping him home from school when he is sick. On two separate occasions in 2018, Jessica kept the child in her care beyond her visitation time allowed in the decree upon her concerns for the child's medical wellbeing. Jessica also made two separate reports, in February and June 2018, to the Iowa Department of Human Services (DHS) that Jared was not meeting the child's medical needs. Both of the ensuing assessments by DHS were unfounded. For his part, Jared testified to his belief that he adequately tends to the child's medical needs, he just does not agree with Jessica's practice of rushing the child to the hospital upon any sign of illness. The child's kindergarten teacher testified the child had only missed two days of school during the academic year, he generally appears healthy, and she had no concerns that the child was inappropriately being allowed to go to school when ill. Upon our de novo review of the evidence, all we see is a difference in parenting styles when it comes to medical treatment, not a superior ability of either parent to minister to the child's physical health. As to Jessica's claim Jared is not fostering the child's social welfare, we find convincing the testimony of the child's kindergarten teacher confirming that the child is on track socially.

The evidence was also conflicting as to each of the parent's abilities to support the other's relationship with the child. While Jessica generally alleges that Jared refuses her any additional visitation beyond what she is entitled to in the original decree, she variously conceded that is not really the case, agreeing Jared occasionally allows her extra time if she "push[es] hard enough." According to Jessica, Jared supports his denials of additional visitation with various excuses, often times taking the position he was not given enough advance notice. But the evidence does show Jared has allowed Jessica additional visitation and deviations as to when Jessica exercises her parenting time. According to Jared, he allows Jessica additional visitation whenever he can make it work. While the evidence is conflicting, what is clear is that much of the difficulty in communication and co-parenting is a direct result of Jessica's demanding tendencies and her campaign to make Jared look like he cannot adequately address the child's medical needs. The parties' ability to effectively communicate about the child is unquestionably strained. While the strain is attributable to the conduct of both parents, we find at least a preponderance of the strain to be attributable to Jessica. We also find hollow Jessica's allegation that Jared volitionally ostracizes her from being involved in the child's education; the child's kindergarten teacher's testimony easily disposes of such a notion. As to the complaint that Jared inappropriately denied Jessica access to the child's insurance card, the record shows Jared went out of his way to facilitate getting insurance information to Jessica.

While we are without the benefit of the express credibility determinations of the district court, the court's rejection of the credibility of Jessica's allegations

against Jared is implicit in its conclusion that Jessica failed to show a superior ability to provide for the child's wellbeing.

> While we might have made different findings had we been the trier of fact, the district court heard the witnesses, and we did not. Since this particular case turns largely on the relative credibility of [the parties], and more generally on their trustworthiness, we defer to the district court's findings

and agree with its conclusions. *See In re Marriage of Brown*, No. 19-0705, 2020 WL 569344, at *4 (Iowa Ct. App. Feb. 5, 2020) (quoting *In re Marriage of Zogg-Kellet*, No. 09-0652, 2010 WL 625023, at *4 (Iowa Ct. App. Feb. 4, 2010)).

We do not conclude that Jessica is an unsuitable parent. Nor do we find Jared is a perfect parent. We simply conclude Jessica failed to meet her heavy burden to show she has a superior ability to minister more effectively to the child's wellbeing. *See Frederici*, 338 N.W.2d at 158. For that reason, we affirm the denial of Jessica's request for modification of physical care.

B.      Visitation

We turn to Jared's challenge on appeal, that the court erred in modifying the visitation provisions of the decree. He complains Jessica only requested modification of physical care and argues he was thus not on notice that modification of visitation was in play and the court's alleged sua sponte modification of visitation was therefore impermissible.

Jared discusses two of this court's prior decisions. He first discusses *In re Marriage of Hute*, a case in which a modification applicant requested mere modification of visitation, not legal custody or physical care. *See* No. 17-0046, 2017 WL 3283382, at *3 (Iowa Ct. App. Aug. 2, 2017). The court ultimately modified legal custody. *Id.* at *1. We concluded "[t]he parties were not given notice

that custody was at issue" and, "[u]nder the circumstances, sua sponte modification of the custodial provisions of the decree was not proper." *Id.* at *3. However, we distinguished *Hute* in the second case noted by Jared. In *In re Marriage of Seward*, the modification petitioner specifically requested modification of physical care and broadly requested the court to "enter such orders" as to "other matters appropriate under the circumstances." No. 18-1690, 2019 WL 1934002, at *1 (Iowa Ct. App. May 1, 2019). The court denied the request for modification of physical care but modified visitation. *Id.* at *2. The court denied the appellant's argument in her motion to reconsider, enlarge, or amend that the court impermissibly modified visitation, because that issue was not before the court. *See id.* When the argument was echoed on appeal, we concluded the appellant "had fair notice the visitation provision was potentially at issue given the modifications broadly worded prayer," which "permitted the court to modify 'other matters appropriate under the circumstances,' which would include the visitation provision under the decree." *Id.*

Here, Jessica's petition likewise broadly requested modification of "other and further" matters "the court deems appropriate." Jared goes on to argue that the direct examination of the appellant in *Seward* additionally put her on notice that modification of visitation was in play, *see id.* at *3, while Jessica indicated in her testimony that she was not seeking a mere modification of visitation. But, we do not find that circumstance to be dispositive. Jared's primary complaint on appeal is that he was not on notice visitation was at issue and he was therefore not prepared to make an adequate record on the issue. We disagree. It makes sense to not provide relief beyond what is requested, *e.g., Hute*, 2017 WL 3283382, at

*3. But this proceeding was unquestionably and obviously driven by Jessica's desire to have more time with the child. An award of physical care would have effectuated that desire, as does a lesser award of expanded visitation. While Jessica specifically requested modification of physical care but did not make a specific prayer for modification of visitation, we liberally construe her prayer for general equitable relief to include a request for modification of visitation, as the petition and evidence fairly conform to that relief. *See, e.g.*, *Lee v. State*, 844 N.W.2d 668, 679 (Iowa 2014). While Jared claims surprise because Jessica testified she was seeking modification of physical care as opposed to expanded visitation, interpreting her testimony as all or nothing is simply illogical given the overarching theme of the proceedings—Jessica's desire to have more time with the child. We reject Jared's argument that the court was without authority to modify visitation.

## IV.    Conclusion

We affirm the district court's modification of the custody decree.

**AFFIRMED.**