# IN THE COURT OF APPEALS OF IOWA

No. 24-0951
Filed January 28, 2026

**In re the Marriage of Katie Anne Wilson and Jamie Lee Wilson**

Upon the Petition of
**Katie Anne Wilson,**
Petitioner–Appellee,

And Concerning
**Jamie Lee Wilson,**
Respondent–Appellant.

Appeal from the Iowa District Court for Polk County,
The Honorable Jeanie K. Vaudt, Judge.

**AFFIRMED**

Jessica A. Millage of Flanagan Law Group, PLLC, Des Moines,
attorney for appellant.

James R. Hinchliff of Shindler, Anderson, Goplerud & Weese, P.C.,
West Des Moines, attorney for appellee.

Considered without oral argument
by Tabor, C.J., and Ahlers and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

Katie and Jamie Wilson dissolved their nine-year marriage in 2021. About two years later, the parties' efforts at joint physical care proved challenging. The children were constantly shuffled between homes—interfering with their schoolwork and precluding a stable home environment. Jamie struggled to get their daughter to school on time—resulting in a weekly pattern of tardiness. Most significantly, Jamie was convicted of operating while intoxicated—his third OWI—and concealed the conviction from Katie despite continuing to drive the children. So Katie petitioned to modify the decree, seeking to place the children in her physical care rather than joint physical care. The district court agreed, and Jamie appeals.

On our de novo review, giving due deference to the district court in this close case, we affirm. We find Jamie's criminal conviction—and its impact on Jamie and Katie's ability to effectively coparent because of his concealment—qualifies as a substantial change in circumstances warranting modification. We also agree that the modification is in the children's best interests. Our review of the record confirms that the children were not thriving under a joint schedule that ferried them between homes almost daily, and we believe the children are best served by consistent and stable time in Katie's physical care during the school week. Finally, given the relative closeness of the merits and the parties' respective abilities to pay, we decline Katie's request for appellate attorney fees.

## I. Factual Background and Proceedings

Katie and Jamie married in 2012 and share three children—two boys and a girl.[1] In 2021, the couple divorced. The dissolution decree placed the

---

[1] They were sixteen, twelve, and eight years old as of the modification hearing.

children in the parents' joint physical care, implementing a 2-2-3 parenting schedule with alternating weekends.[2] At the time, Katie lived in Chariton and Jamie lived in Knoxville, twenty-seven miles—and roughly a thirty-minute drive—apart in rural southern Iowa.

At first, the children attended school in Chariton and Jamie's stepfather would pick up the children on Jamie's parenting days that fell on school days and bring them to and from Knoxville. By August 2021, both parents had moved to Des Moines—now living about ten miles, though normally still a twenty-five-minute drive, apart. After the moves, the parents briefly adjusted their schedule to have the children stay with Katie during the school week to ease the children's transition to new schools. But by November, the parents reverted to the original 2-2-3 plan.

After moving to Des Moines, Jamie struggled to timely take the children to and from school. During the 2022–2023 school year, the daughter was tardy once or twice a week. The boys' grades also dipped, and Katie believed Jamie was not spending adequate time with them on their homework during his evenings. And Jamie's work schedule made it difficult to pick up the children after school, so they went to Katie's home each day, which is close to their schools.[3] Katie's work schedule, conversely, was flexible and allowed frequent remote work or time off if the children needed to be picked up or stay home sick.

---

[2] Jamie had care of the children Monday and Tuesday night; Katie on Wednesday and Thursday night; and the parties alternated care on Friday through Sunday nights.

[3] After Katie petitioned to modify the decree in March 2023, Jamie began making more of an effort to pick up the children from school on his parenting days. And in November, Jamie switched jobs to a position that provides greater flexibility and remote work options.

Katie also developed concerns about Jamie's use of parenting time and engagement with the children. According to Katie, Jamie did not attend parent-teacher conferences until early 2023, nor did he attempt to use the children's school portals to keep up with their assignments until around December 2023. He almost never scheduled or took the children to their healthcare appointments. And at times, Jamie left the older boys alone overnight with his roommate.

Most seriously, in February 2022, Jamie consumed alcohol, drove his car into a light post, and then tried to flee the scene on foot. After an officer apprehended him, his blood alcohol content was twice the legal limit and he tested positive for marijuana metabolites. He later pleaded guilty to operating while intoxicated (his third such offense), served nine days in jail, and was placed on probation for two years. Jamie's OWI occurred during his parenting weekend with the children, although they were with Jamie's mother at the time. And Jamie withheld all of this from Katie. She only learned of the conviction months after the fact while buckling the daughter into Jamie's car and noticing an Intoxalock—a device that requires a breath sample before starting the ignition.

After the OWI, Katie felt the "trust" between the two parents had been "damaged" and that it undermined their ability to communicate. In support, Katie provided text messages showing some instances of rude or condescending comments. Later, the older son stopped participating in the father's parenting time.

Katie petitioned to modify the dissolution decree in March 2023. She pointed to the frequent shuttling between homes after school, the children's tardiness and academic struggles, Jamie's late pick-ups of the children, and Jamie's OWI as circumstances warranting a change in physical care.

After a one-day hearing in January 2024, the district court modified the decree. The court concluded "Jamie's third historical OWI conviction, together with his knowing concealment of information from Katie which affected their coparenting relationship, constitutes a material and substantial change in circumstances whether viewed in isolation or together with the issues related to the children's school performance, attendance, and travel." It also found that modification best served the children as it would "provide the children with stability in one home during the school year to focus on their growth." And so, it placed the children in Katie's physical care with visitation for Jamie scheduled every other weekend and increased in the summer. Jamie unsuccessfully moved for reconsideration and now appeals.[4]

## II.    Physical Care

We review a district court's decision to modify the physical-care-provisions of a dissolution decree de novo. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); Iowa R. App. P. 6.907. Still, we give the district court's factual findings "weight and defer especially where the credibility of witnesses is a factor in the outcome." *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (cleaned up). We do so "because the district court has a front-row seat to the live testimony, viewing the demeanor of both the witness as she testifies and the parties while they listen, whereas our review is limited to reading black words on a white page of a sterile transcript." *Id.* And we recognize that this "greatly help[s]" the district court "in making a wise decision." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (cleaned up); *see also In re Marriage of Reed*, No. 09-0029, 2009 WL 4122884,

---

[4] The court's order made other changes to the dissolution decree, but Jamie only challenges the physical-care provision.

at *6 (Iowa Ct. App. Nov. 25, 2009) ("In close cases such as this, we give careful consideration to the district court's findings.").[5]

To modify a dissolution decree, a party must first show that there has been a substantial change in material circumstances. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The substantial change "must be more or less permanent, not temporary," not contemplated by the original decree, and relate to the children's welfare. *Id.* The parent seeking modification must also "prove an ability to minister more effectively to the children's well-being." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996). This is a heavy burden because "once custody of children has been determined, it should be disturbed only for the most cogent reasons." *Id.* As always, our main consideration is the best interest of the children. *Id.*; *see also In re Marriage of Winnike*, 497 N.W.2d 170, 173 (Iowa Ct. App. 1992).

*Substantial Change in Circumstances.* Jamie argues that Katie's proffered bases for modification do not rise to the level of a substantial change

---

[5] At the close of evidence, the district court requested proposed orders from the parties. Jamie argues that the court's modification order "cite[s] the same caselaw with no deviation" from Katie's proposed order, gave "complete deference" to her proposed factual findings, and "adopt[ed] verbatim every substantive request of Katie's on the terms of the modification, with the singular exception of the addition of a midweek visit for Jamie every other week." So he asks us to review the order with "heightened scrutiny." *See NevadaCare, Inc. v. Dep't Hum. Servs.*, 783 N.W.2d 459, 465 (Iowa 2010) (reasoning that while "the district court's verbatim adoption of [one party's] proposed findings of fact and conclusions of law" does not require "a higher standard of review," it means an appellate court must "scrutinize the record more closely and carefully"). But here, the proposed orders are not in the record—they were not filed in the docket when submitted to the court, and Jamie did not attach the proposed orders to his 1.904(2) motion or otherwise ensure they were before us. Without the orders, we cannot determine whether, or to what degree, the court's order mirrored Katie's proposed order. We thus proceed with our normal scrutiny in performing de novo review.

in circumstances. But on our de novo review, we agree that the totality of Jamie's OWI, his failure to disclose it, and the resulting impact on Jamie and Katie's coparenting relationship constitutes a qualifying change.

"Criminal conduct and alcohol abuse can constitute a substantial change in circumstances." *Moellers v. Sindelar*, No. 14-1361, 2015 WL 1546464, at *3 (Iowa Ct. App. Apr. 8, 2015). While Jamie's OWI was his first since 2010, it was his third OWI in his life. Jamie insists that he has engaged with treatment and abstained from alcohol since then. But his repeated OWI convictions show that he continues to struggle with maintaining lasting sobriety in a way that is not merely temporary. Indeed, the nature of this new offense is concerning—he drove under the influence of alcohol and marijuana, crashed his car, and tried to flee the scene.

We are also troubled that this occurred during Jamie's parenting weekend—even if he had left the children with their grandmother at the time. All the more because the original decree required substantial windshield time for the children during the evenings. So Jamie's conviction relating to his ability to safely operate a vehicle is a particularly relevant circumstance here. *Cf. In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986) ("A parent's moral misconduct is a serious consideration in custody determinations.").

And perhaps most important, Jamie failed to inform Katie of his arrest, conviction, stay in jail, or driving restrictions. She only learned about any of this significant information affecting their children because she stumbled upon the Intoxalock device in Jamie's car when buckling up their daughter. So it is no surprise that Katie testified that her trust in Jamie was "damaged." "A lack of trust poses a significant impediment to effective co-parenting." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007). As does the failure of the spouses to effectively communicate. *See id.* We thus agree that Jamie's

withholding of this information from Katie further, and more or less permanently, undermines the parties' ability to co-parent. Katie has shown a qualifying substantial change in circumstances.

*Children's Best Interests.* Jamie next argues that even if Katie demonstrated a qualifying change in circumstances, the children are best served by joint physical care and both parents are capable caregivers. But again, we agree with the district court that the children are best served in Katie's physical care.

The 2-2-3 schedule had the children ferried between school activities and each parents' house nearly every evening. The constant travel proved challenging for the children, preventing them from being settled for extended periods or completing homework. And the children's statements to the court—made through counsel at the Iowa Center for Children's Justice—largely reflect a desire for less travel and a more stable placement. Indeed, the older son wished for primary care with Katie, the middle son asked for school days with Katie and alternating weekends with each parent, and the youngest daughter asked for equal time with both parents but in "longer chunks" to reduce the back-and-forth transport.

Given the children's need for more focused afterschool time to complete their assignments, their increased extracurricular activities, Katie's proximity to their schools, and Katie's role as the primary overseer of the children's appointments and schooling, we believe the district court's schedule creating a consistent placement in Katie's care best serves the children. *See Rolling v. Hoffman*, No. 14-0102, 2014 WL 2600315, at *2 (Iowa Ct. App. June 11, 2014) ("In custody modification cases, stability is the trump card."). And while we acknowledge the reduction in parenting time for Jamie, "[p]hysical care issues are not to be resolved based upon perceived

fairness to the *spouses,* but primarily upon what is best for the *child*." *Hansen*, 733 N.W.2d at 695.

## III.    Appellate Attorney Fees

Finally, Katie asks for an award of appellate attorney fees. In a dissolution modification proceeding, we "may award attorney fees to the prevailing party in an amount deemed reasonable." Iowa Code § 598.36 (2023). And in exercising that discretion, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Ficken*, 989 N.W.2d 669, 674 (Iowa Ct. App. 2023) (cleaned up). Considering the relative closeness of the merits and the financial statuses of both parties, we decline to award Katie appellate attorney fees.

**AFFIRMED.**